Michael O'ROURKE *v.* STATE of Arkansas

CR 87-17 765 S.W.2d 916

Supreme Court of Arkansas
Opinion delivered February 27, 1989

146

*Jeff Rosenzweig,* for appellant.

*Steve Clark,* Att'y Gen., by: *Jack Gillean,* Asst. Att'y Gen., for appellee.

PER CURIAM. The petitioner Michael O'Rourke was convicted of the capital murder of his parents and sentenced to death by lethal injection. We affirmed the conviction. *O'Rourke* v. *State,* 295 Ark. 57, 746 S.W.2d 52 (1988). The petitioner now seeks permission to proceed in circuit court for post-conviction relief pursuant to Criminal Procedure Rule 37.

The petitioner's chief allegations claim that his counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the sixth amendment. Second, the petitioner must show that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must show there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. A reasonable probability is a probability

sufficient to undermine confidence in the outcome of the trial. In making a determination on a claim of ineffectiveness, the totality of the evidence before the judge or jury must be considered. *Strickland* v. *Washington*, 466 U.S. 668 (1984).

■ The petitioner first alleges that his counsel was ineffective for not introducing any evidence in mitigation during the penalty phase of the trial. At trial, the defense maintained that the petitioner did the crime but that he was not responsible because of mental disease or defect. Both the prosecution and the defense introduced evidence on that point. After the defense was rejected and the jury returned a guilty verdict, neither party put on any evidence of aggravating or mitigating circumstances. The state did not argue against mitigation during the punishment phase but did argue as one aggravating circumstance that the petitioner murdered his parents for pecuniary gain. The defense argued that the petitioner did not deserve the death penalty because of his extreme mental illness. The petitioner claims that his attorney was ineffective by simply arguing against the death penalty rather than presenting evidence in mitigation. During the guilt phase of the trial the only witness for the defense was a psychologist who testified that in his opinion the petitioner was too mentally disturbed at the time of the crime to realize the criminality of his conduct. If other witnesses were available, the burden is on petitioner to state specifically who the potential witnesses were and what evidence they would have given, and to demonstrate that the defense suffered actual prejudice by their absence such that he was denied a fair trial, the outcome of which is likely to have been different. *See Strickland* v. *Washington, supra.* As the petitioner has failed to show what other evidence the defense could have offered which would have changed the outcome of the trial, he has not met that burden.

■ It is true that in *Neal* v. *State*, 274 Ark. 217, 623 S.W.2d 191 (1981), we found that diminished mental capacity has different significance in the determination of guilt and in the imposition of sentence once guilt has been determined. We went further in *Neal* and found that in that case counsel was ineffective for failing to put on evidence of diminished mental capacity during the penalty phase of trial, even though such evidence was presented in the guilt phase. The distinction between *Neal* and petitioner's case is that in *Neal* there was additional evidence of

the appellant's diminished mental capacity other than that already introduced, and the closing statement was brief and failed to emphasize the significance of the appellant's diminished mental capacity. In this case, the petitioner has failed to show any evidence that could have been presented but was overlooked. Moreover, the petitioner's attorney pleaded during the penalty phase that his client not be put to death because of his mental disorder. The petitioner has not shown that his attorney's performance was deficient.

The petitioner next claims that his attorney was ineffective for failing to object prior to trial on the ground that the petitioner was incompetent to stand trial and in failing to offer evidence to support the objection. The petitioner also suggests that the court should have ordered a competency hearing *sua sponte*. The petitioner notes that his trial was delayed for three years due to his insanity, that he had not communicated with his attorney for months before the trial and that he attended the trial in short pants and bare feet. The petitioner states that his attorney should have testified as an officer of the court that his client refused to communicate with him.

Soon after the petitioner was charged he notified the court that his defense would be not guilty by reason of mental disease or defect. The trial court ordered that he be evaluated and on November 23, 1983, four months after the murders, the State Hospital submitted a report stating that the petitioner was incompetent to stand trial. The trial court committed the petitioner to the State Hospital for treatment. On July 31, 1983, the State Hospital notified the trial court that the petitioner was fit to proceed to trial. On December 13, 1984, petitioner's counsel requested a hearing on the petitioner's fitness, and the court ordered the petitioner to the State Hospital for reevaluation. On January 21, 1985, a hearing on the petitioner's fitness was held and a psychologist testified for the defense that the petitioner was unable to assist his attorney in his defense. A psychiatrist from the State Hospital agreed, testifying that the petitioner's assistance to his attorney would be severely compromised by the fact that the petitioner used paranoid beliefs in deciding whether to volunteer information to his attorney. The trial court found that the petitioner was unable to assist in his defense, and he was again committed to the State Hospital. On January 19, 1986, the State

Hospital notified the trial court that the petitioner was fit to proceed. In February 1986, the petitioner wrote the trial court, stating that he was competent and asking to proceed to trial.

On August 18, 1986, the defense again contended that the petitioner was not fit for trial and asked for further evaluation. The court ordered two physicians to examine him; they recommended that the petitioner be evaluated once again at the State Hospital. On September 19, 1986, after the evaluation was completed, the State Hospital submitted a report finding that the petitioner was fit to proceed to trial.

▆▆▆ A person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult counsel and to assist counsel in preparing his defense, may not be subjected to a trial. *Henry* v. *State*, 288 Ark. 592, 708 S.W.2d 88 (1986). In this case, the defense vigorously pursued an insanity defense and throughout the proceeding sought to have the petitioner declared incompetent to stand trial. Obviously a point came where trial counsel felt that his efforts to that end were futile and the trial should proceed. Even if the petitioner's counsel had testified and had had the defense psychologist testify at a last minute competency hearing, it is not probable that the result would have been different. At such a hearing the psychiatrists at the State Hospital would no doubt have opined that the petitioner was fit to stand trial and the psychologist for the defense would have disagreed. Moreover, there is nothing provided to support the assertion that counsel should have sought additional psychiatric testimony. The trial court was aware of the lack of cooperation by the petitioner as it was also aware that previously the petitioner himself had asked to proceed with the trial. The petitioner has failed to show that his counsel's conduct deprived him of a fair trial.

▆▆▆ The petitioner contends that his counsel was ineffective for failing to object to the order and form of psychiatric testimony. He states that his counsel should have objected to the state's calling one of the psychiatrists at the State Hospital in its case-in-chief before the defense had embarked upon a strategy. Although the petitioner asserts that this allowed the state to unfairly bolster its case, petitioner makes no real statement of prejudice. Furthermore, the defense had stated its intention to

pursue a defense of insanity.

■ The petitioner claims next that his attorney prejudiced him by stating in opening argument that he was not sure whether his client would testify. He contends that the same prejudice resulted when his counsel elicited on cross-examination of the state's psychiatrist his opinion that if the petitioner was called as a witness he would probably not cooperate. In closing argument, counsel said he wished he could have gotten his client to testify. Counsel was obviously trying to show that his client was being silent not in an effort to hide something, but because he was so mentally disturbed that he could not or would not cooperate in his own defense. Again, as it was purely a matter of strategy, the allegation provides no basis for relief under Rule 37.

■ The petitioner makes the conclusory claim that his attorney had no real strategy. The record clearly shows that the defense was based on insanity and a plea for mercy. Therefore, the point is without merit.

■ The next allegation is that the petitioner's counsel should have sought an accomplice instruction. The petitioner and Dennis Meadors, the petitioner's roommate, killed the petitioner's parents. Meadors testified to the way the murders happened and claimed that the petitioner forced him to participate. The petitioner argues that the lack of an accomplice instruction severely prejudiced the petitioner although he does not say how. A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. Ark. Code Ann. § 16-18-111(e)(1) (1987) [Ark. Stat. Ann. § 43-2116 (Repl. 1977)]. The state presented ample evidence tending to connect the petitioner to the crime. A shop owner testified that the petitioner sold her coins that had been stolen during the murder and the petitioner was also identified as being present when a handgun used in the murders was purchased by Meadors. In light of the evidence, the lack of an accomplice instruction did not prejudice the petitioner.

■ The petitioner was charged with three forms of capital murder. He was charged with killing two persons in the same episode, with committing murder in the course of a robbery, and with entering into an agreement to commit murder. See Ark.

Code Ann. § 5-10-101(a)(1)(3)(7) (1987) [Ark. Stat. Ann. § 41-1501(1)(a)(c)(g) (Repl. 1977)]. The petitioner claims that his counsel should have forced the state to narrow its allegations or that counsel should have requested jury forms that would allow the jury to specify of which charge the petitioner was found guilty. The form only required a finding of guilty or not guilty. The petitioner claims that there was insufficient evidence to convict him of the charge of hiring someone to commit murder. However, because there was ample evidence to sustain the first two theories, the petitioner has failed to demonstrate prejudice. Moreover, the allegation constitutes an attack on the sufficiency of the evidence. Such a challenge presents a direct, rather than collateral, attack on the judgment and must be made at trial and on direct appeal. *McCroskey* v. *State*, 278 Ark. 156, 644 S.W.2d 271 (1983). Furthermore, a petitioner may not reach the issue of the sufficiency of the evidence by alleging ineffective assistance of counsel.

The petitioner makes the conclusory allegation that his attorney failed to conduct a proper voir dire of the jury. He states that counsel failed to question the jury sufficiently on insanity, the death penalty, and homosexuality, but he does not state what prejudice arose from the failure to explore any particular area in voir dire. On direct appeal we held that the record reflects that a fair and impartial jury was seated by the trial judge, and the allegation offers no facts from which a different conclusion could be reached now.

█ The petitioner alleges that his counsel was ineffective in failing to make an adequate record to support his motion for a change of venue. On appeal we held that the affidavits supporting his motion failed to show the requisite prejudice because they failed to allege the prejudice was county-wide, and while the affiants alleged prejudice in the Dardanelle district, their later testimony belied their earlier allegations. The petitioner names no one that could have alleged county-wide prejudice. As stated, we found on appeal that the jury panel was fair and impartial.

█ At various times in argument the petitioner's counsel referred to petitioner as a monster and compared him to Jack the Ripper, the Mad Hatter, and Lizzie Borden. A reading of the arguments in their entirety reveals that counsel was simply trying

to convince the jury that the petitioner was so insane that it would be merciless to put him to death. Other learned counsel might debate the trial tactics used, but lack of success with trial tactics does not equate with ineffective assistance of counsel. *See Fink* v. *State*, 280 Ark. 281, 658 S.W.2d 359 (1983).

The petitioner next claims that his attorney was ineffective in not objecting to the prosecutor's statement in his closing argument during the penalty phase that if the jury finds aggravating circumstances which outweigh the mitigating circumstances, they should sentence him to death. While Ark. Code Ann. § 5-4-603(1) (1987) [Ark. Stat. Ann. § 41-1302(1) (Repl. 1977)], actually provides that to sentence a defendant to death, the jury must also find that the aggravating circumstances must justify a sentence of death, the petitioner has failed to prove that he was prejudiced by the omission. It is unlikely that the addition of the omitted phrase would have resulted in a different sentence.

The petitioner alleges that the Arkansas death penalty statute is unconstitutionally mandatory and that his attorney was ineffective for not making an objection on that ground. This precise argument has been rejected to us. *Pickens* v. *State*, 292 Ark. 362, 730 S.W.2d 230 (1987). Therefore, the petitioner's attorney cannot be said to have been ineffective for failing to pursue the argument.

The petitioner claims that his counsel was ineffective for not moving for a dismissal because his ability to defend himself was compromised from the delay due to his incompetence. Although the petitioner alleges prejudice, he does not state what that prejudice is or how the delay affected his ability to defend himself. It is incumbent on the petitioner to show actual prejudice so serious as to deprive him of a fair trial. *Neff* v. *State*, 287 Ark. 88, 696 S.W.2d 736 (1985).

The petitioner states that under the doctrine of comparative review, his death sentence cannot stand. The petitioner's accomplice received a sentence of ten years probation in exchange for his plea of guilty and testimony in the petitioner's case. However, the evidence against the petitioner, which showed that he brutally murdered his parents for insurance proceeds, would clearly justify a sentence of death when compared with other cases in which the death penalty has been allowed to stand.

Moreover, this is an issue that should have been raised at trial or on appeal. Since it was not and is not so fundamental as to render the conviction void, we will not consider it. *White* v. *State*, 290 Ark. 77, 716 S.W.2d 203 (1986).

The petitioner argues that the death sentence rendered is illegal as violative of the eighth amendment "double counting prohibition." This argument was rejected on direct appeal. Rule 37 does not provide an opportunity to reargue points settled on appeal. *Swindler* v. *State*, 272 Ark. 340, 617 S.W.2d 1 (1981).

The petitioner next claims that the Arkansas statutory definitions of capital and first degree murder unconstitutionally overlap and give the prosecutor unbridled discretion. These arguments should have been made at trial or on appeal and are not sufficient to void the conviction. *White* v. *State, supra.*

The petitioner argues that the jury ignored the evidence in mitigation and, therefore, the death sentence may not stand. This is a challenge to the sufficiency of the evidence and is a direct, rather than a collateral, attack on the conviction. Such attacks are not cognizable under Rule 37. *McCroskey* v. *State, supra.*

The petitioner also claims that his attorney should have asked for an additional instruction on the affirmative defense set forth in Ark. Code Ann. § 5-10-101(b) (1987) [Ark. Stat. Ann. § 41-1502(2) (Repl. 1977)], which states that it is an affirmative defense to any prosecution under the felony murder provision in section 5-10-101(a)(1) for an offense in which the defendant was not the only participant that the defendant did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid its commission. There would have been no rational basis for this instruction since there was absolutely no evidence that the petitioner did not kill his parents or aid in the commission of the murders.

The petitioner has made two allegations which require an evidentiary hearing. He claims that he was prejudiced by his counsel's failure to ask for instructions on lesser included offenses of capital murder. While there was sufficient evidence to convict the petitioner of capital murder, the instructions only

gave the jury the option of acquitting the petitioner or convicting him of capital murder. Since there were no instructions on lesser offenses, a rejection of the insanity defense gave the jury no alternative but to find the required premeditation and deliberation or set the petitioner free. *See Robinson* v. *State*, 269 Ark. 90, 598 S.W.2d 421 (1980). A court is not obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the petitioner of the offense charged and convicting him of the included offense. Ark. Code Ann. § 5-1-110(c) (1987) [Ark. Stat. Ann. § 41-103(3) (Repl. 1977)]. In this case the jury could have found that because of the petitioner's mental disease or defect he was incapable of acting with premeditation and deliberation and, therefore, convicted him of second degree murder. Ark. Code Ann. § 5-10-103 (1987) [Ark. Stat. Ann. § 41-1503 (Repl. 1977)]. Therefore, the petitioner was entitled to instructions on lesser included offenses. Counsel of course may have had some reason in mind when he did not ask for instructions on lesser offenses; therefore, we grant permission for an evidentiary hearing in a circuit court to determine whether counsel was ineffective under the standard set out in *Strickland* v. *Washington, supra*, and our case law, in failing to request instructions on lesser included offenses.

The petitioner also alleges that his attorney should have objected to testimony that the petitioner invoked his constitutional right to counsel. The following took place during the state's examination of Sgt. F. V. Kimery of the Arkansas State Police:

> Q. (Prosecuting Attorney) Mr. Kimery, I believe that you have had some other contact with Mr. O'Rourke. Is that correct? Other than the initial investigation?
>
> A. (By Kimery) Yes, sir, I talked to Michael O'Rourke on July 30. I interviewed him as a suspect, and I believe you have a copy of that, on August 4, 1983.
>
> Q. What did he tell you when you interviewed him as a suspect?
>
> A. He stated that he did not want to make a statement at this time on the counsel of his attorney. As I recall, he had an attorney present.

The state also admitted a transcript of a taped

conversation between the petitioner and Sgt. Kimery. The petitioner claims that inquiry and the admission of the taped conversation allowed the use of his silence and insistence on counsel as proof that he was not insane at the time of the crime in violation of *Doyle* v. *Ohio*, 426 U.S. 610 (1976). In *Doyle* the United States Supreme Court held that the state may not use a defendant's post-*Miranda* silence to impeach his trial testimony. In *Wainwright* v. *Greenfield*, 474 U.S. 284 (1986), the Court held that the state's use of the defendant's post-*Miranda* silence as evidence of sanity violated the defendant's constitutional right to due process. In the petitioner's case, as in *Wainwright*, the state argued in closing that the defendant's invocation of his right to counsel was proof that the defendant was sane. Since the petitioner's silence was used against him in that it was used to rebut his affirmative defense of insanity, the trial court should determine whether the petitioner's counsel was ineffective for failing to object to the inquiry of Sgt. Kimery, to the closing argument, and to the admission of the transcript of the phone call.

Petition granted in part and denied in part.

GLAZE, J., would grant only as to relief related to issue involving *Wainwright* v. *Greenfield*.