Dinzel Earl NORMAN *v.* STATE of Arkansas

CR 98-582                                   2 S.W.3d 771

Supreme Court of Arkansas
Opinion delivered October 21, 1999

*Richard R. Parker*, Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Ass't Att'y Gen., for appellee.

PER CURIAM. Appellant, Dinzel Earl Norman, was convicted by a jury of conspiracy to manufacture methamphetamine and conspiracy to manufacture marijuana. He

was sentenced by the Newton County Circuit Court to a combined term of forty years in the Arkansas Department of Correction. We affirmed appellant's conviction and sentence in *Norman v. State*, 326 Ark. 210, 931 S.W.2d 96 (1996). Subsequently, appellant petitioned for postconviction relief pursuant to Ark. R. Crim. P. 37. After a hearing on appellant's petition, the trial court determined that appellant had failed to show that his counsel's performance was ineffective. Appellant has appealed that decision to us, raising three points of error. We find appellant's first and third points require a remand to the trial court for specific written findings. Appellant's second issue is affirmed.

In June 1993, Chesley Gordon, a confidential informant, con-tacted Investigator Lance King, of the Arkansas State Police. Mr. Gordon stated that he had made an arrangement with appellant to cook methamphetamine on appellant's property in Newton County. Subsequently, officers of the Arkansas State Police and the Drug Enforcement Agency directed Mr. Gordon to go to appel-lant's residence and begin the process of cooking the methamphetamine and notify them after the process had begun so that a search warrant could be obtained for appellant's property. On June 25, 1993, Special Agent Steve Lowry of the Drug Enforce-ment Agency prepared an affidavit for search warrant on appellant's property and presented it to the circuit judge who found that reasonable cause existed and issued a search warrant. The search warrant was executed, and officers seized numerous items of contra-band including a clandestine methamphetamine lab found in a small camper trailer and sixty-five marijuana plants found growing on appellant's property. At appellant's trial, Mr. Gordon was a key witness for the State implicating appellant in the crimes. After appellant's direct appeal, he filed a Rule 37 petition raising the claim of ineffective assistance of counsel based on several points. One point raised was that a conflict of interest existed involving his attorney and Mr. Gordon. Appellant asserted that his attorney, Mr. George Stone, had also been appointed as Mr. Gordon's attorney and there was no order relieving Mr. Stone from his obligation.

At the Rule 37 hearing, Mr. Stone testified that he did not believe he was Mr. Gordon's attorney at the time he was represent-ing appellant. He said that he had been appointed to represent a number of people including Mr. Gordon on drug charges at that

same time, but he filed motions to be relieved as counsel on those individuals. Mr. Stone testified that he would not have gone to trial for appellant if he had been representing Mr. Gordon because Mr. Gordon was a key witness against appellant. The prosecuting attorney also commented during the hearing that he did not consider Mr. Stone Mr. Gordon's attorney because the prosecutor never negotiated with Mr. Stone for the testimony of Mr. Gordon.

In rejecting appellant's conflict of interest claim, the circuit court found that Mr. Stone only represented Mr. Gordon for purposes of arraignment and shortly thereafter filed a motion to withdraw. Additionally, it was the court's recollection that the motion was granted but that no order was entered reflecting the withdrawal. The court noted that there was no substitution of counsel for Mr. Gordon because the State indicated that it was not going to proceed on the charges against him. The court also observed that there was no indication from the record that Mr. Stone ever made another appearance with Mr. Gordon or ever represented Mr. Gordon in any capacity after Mr. Gordon entered his plea of not guilty. The trial court's ultimate ruling, as it appears in the order, was that Mr. Stone was not representing Mr. Gordon at the same time he was representing appellant. The court did not make any finding in its order beyond the representation determination.

Appellant argues on appeal that the trial court erred in finding that Mr. Stone was not representing Mr. Gordon. In support of his argument, appellant contends that an order was never entered relieving Mr. Stone from his representation of Mr. Gordon. We agree.

We have repeatedly held that we will not reverse the trial court's denial of postconviction relief unless the trial court's findings are clearly against the preponderance of the evidence. *Atchison v. State*, 298 Ark. 344, 767 S.W.2d 312 (1989). At the Rule 37 hearing, when addressing the conflict-of-interest issue, the trial court had a recollection that Mr. Stone had been relieved from his representation of Mr. Gordon. The court also noted that Newton County "is a case where docket entries are not routinely made and if there's no substantial action taken in the case, then it may have been just a de facto removal of Mr. Stone from the case." Also, the prosecutor commented at the hearing that he had not negotiated

with Mr. Stone for the testimony of Mr. Gordon. However, appellant put forth evidence that clearly reflected that no hearing was held on appellant's motion to be relieved and that no order was entered relieving counsel. It was also established that Mr. Stone remained Mr. Gordon's attorney-of-record for almost a year after appellant's trial when Mr. Gordon's case was finally dismissed without prejudice.

*Administrative Order Number 2 — Dockets and Other Records* provides in part that:

> (a)*Docket.* The clerk shall keep a book known as a "civil docket," a book known as a "chancery docket," a book known as a "probate docket," and a book known as a "criminal docket," and a book known as a "juvenile docket," and shall enter therein each action. Cases shall be assigned docket numbers in the order of filing and beginning with the first case filed each year in each court, the last two digits of the current year shall be entered, followed by a hyphen and the number assigned to the case, beginning with the number "1". For further identification, the court may direct that the letters "CIV" or "CR" precede the docket number for cases filed in circuit court, that the letters "E"or "J" precede the docket number for cases filed in chancery court, and that the letter "P' precede the docket number for cases filed in probate court.

> All papers filed with the Clerk, all process issued and returns thereon, all appearances, orders, verdicts and judgments shall be noted chronologically in the dockets and filed in the folio assigned to the action and shall be marked with its file number. These entries shall be brief, but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the Court and of the returns showing execution of process. The entry of an order or judgment shall show the date the entry is made. Where there has been a demand for trial by jury it shall be shown on the docket along with the date upon which demand was made.

> (b)*Judgments and Orders.* The clerk shall keep a judgment record book in which shall be kept a correct copy of every final judgment or appealable order, or order affecting title to or lien upon real or personal property, and any other order which the Court may direct to be kept. The clerk shall denote the date and time that a judgment or order is filed by stamping or otherwise marking it with the date and time and the word "filed."

(c)*Indices*. Suitable indices of the civil, criminal, chancery, juvenile, and probate docket and of every judgment or order referred to in Section (b) of this rule shall be kept by the clerk under the direction of the court.

This administrative order clearly provides that the clerk shall keep a docket and enter all orders and the substance of each order or judgment of the court. In addition, *Administrative Order Number 4 — Verbatim Trial Record* requires a complete record of all contested proceedings unless waived on the record by the parties. It is undisputed that there was no waiver on the record in this case regarding the ruling on trial counsel's motion to be relieved. It puts this court at a considerable disadvantage in reviewing points on appeal pertaining to unrecorded hearings or orders, when a verbatim record is not before us. Clearly, what is recollected by the court or counsel may have gaps and may be disputed by the participants. After reviewing this record, we find that the trial court's decision that Mr. Stone was not representing Mr. Gordon but had been relieved is clearly against the preponderance of the evidence that is before us.

Based on our above decision, we note that the trial court did not consider nor does the trial court's order display specific written findings with regard to whether counsel's dual representation was an actual conflict of interest that adversely affected counsel's performance. Thus, we remand this issue back to the trial court for an analysis under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), and for specific written findings. In this respect, the rule in *Cuyler* provides that "to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler, supra*, at 350. If there is an actual conflict of interest, prejudice is presumed. *Simmons v. Lockhart*, 915 F.2d 372 (8th Cir. 1990). In *Simmons v. Lockhart*, the court noted:

> The conflict of interest, however, must be actual, not merely theoretical. Under the cases, this appears to mean that there must have been some actual adverse effect on the defendant's case. The mere fact, for example, that one of Simmons's lawyers in the state trial court had previously represented a person later called as a prosecution witness against Simmons, does not suffice to entitle Simmons to relief. Simmons must show, in addition, that this dual

> representation made some difference, and that this difference was adverse to his defense. The difference, we take it, need not be so great as to meet the general *Strickland* standard (reasonable likelihood of a different result). But it must be an actual and demonstrable effect of the conflict, and not merely an abstract or theoretical one.

Id. at 378.

Next, appellant also argues that the trial court erred in declining to find counsel ineffective for failing to submit a plea offer in a timely manner.

■ We measure the effectiveness of trial counsel according to the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). According to that standard, the petitioner must show first that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Second, the petitioner must show that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. The petitioner must show there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, *i.e.*, the decision reached would have been different absent the errors. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. In making a determination on a claim of ineffectiveness, the totality of the evidence before the judge or jury must be considered.

At the Rule 37 hearing, Mr. Stone testified that he discussed a plea bargain with appellant on more than one occasion. He specifically recalled relaying a plea offer to appellant in August of 1994. Mr. Stone said that appellant would become agitated when he would suggest a plea bargain. Appellant testified that he was made aware of a plea offer on September 2, 1994. Appellant said that Mr. Stone told him that there had been an offer of seven years with four

suspended, but the State no longer wanted to extend the offer. Appellant asserted that that was the only offer communicated by Mr. Stone.

The trial court found that there was no substantial proof that Mr. Stone failed to submit a plea offer to appellant. Where the evidence is sufficient to support a ruling either way, it cannot be said that the trial court's ruling was clearly against the preponderance of the evidence. *Atchison v. State*, 298 Ark. 344, 767 S.W.2d 312 (1989). We recognize that it is the trial court's task to assess the credibility of witnesses and resolve conflicts of fact. *McDaniel v. State*, 291 Ark. 596, 726 S.W.2d 679 (1987); *Huff v. State*, 289 Ark. 404, 711 S.W.2d 801 (1986). Accordingly, we cannot say that the trial court's decision was clearly against the preponderance of the evidence.

As his last point, appellant contends that the trial court erred in finding that counsel was not ineffective and that counsel put forth a vigorous defense. Specifically, appellant argues that counsel was ineffective for failing to object to the introduction of irrelevant and inflammatory testimony and photographs regarding firearms found at the crime scene. Here, the order of the trial court does not contain any written findings on this issue which was presented in appellant's Rule 37 petition and addressed at the Rule 37 hearing. In *Bumgarner v. State*, 288 Ark. 315, 705 S.W.2d 10 (1986), we made it clear that the requirement of written findings of fact applies to any issue upon which a Rule 37 hearing is held. Thus, we remand this issue for the trial court to enter specific written findings.

Reversed and remanded in part; affirmed in part.