Damond SANFORD *v*. STATE of Arkansas

CR 99-1057 25 S.W.3d 414

Supreme Court of Arkansas
Opinion delivered September 14, 2000

24

*Montgomery, Adams & Wyatt, PLLC*, by: *Dale E. Adams*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Ass't Att'y Gen., for appellee.

T OM GLAZE, Justice. Damond Sanford was convicted of capital murder, residential burglary, rape, and theft of property, and sentenced to death; on direct appeal, we affirmed those convictions. *See Sanford v. State*, 331 Ark. 334, 962 S.W.2d

335 (1998). Sanford subsequently filed a Rule 37 petition requesting postconviction relief, alleging his trial counsel, William Howard, had provided ineffective assistance. The trial court denied Sanford's petition, and in this appeal from that denial, Sanford raises eight reasons why the trial court was wrong and why his convictions should be reversed.

In considering Sanford's points for reversal, it is unnecessary to repeat all the evidence and facts already detailed and related in our earlier *Sanford* decision. We need only revisit those facts relevant to the points argued by Sanford in this appeal. Our established standard of review when considering such claims of ineffective counsel is set forth as follows in *Strickland v. Washington*, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. Thus, a defendant must show first, that counsel's performance "fell below an objective standard of reasonableness," *id.* at 688, and second, that the errors "actually had an adverse effect on the defense." *Id.* at 693. Stated differently, the *Strickland* court held that actual ineffectiveness claims alleging deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice. *Id.*

The first of Sanford's arguments that we consider is his contention that the trial court erred in ruling Howard was not ineffective when he failed to seek the suppression of Sanford's custodial statement, which Sanford claims resulted from an illegal arrest. In making this argument, Sanford points out that the victim, Minnie Ward, had been murdered at her home at about 9:30 a.m. on January 9, 1995, and that Sanford was arrested without probable cause for the crime on the evening of the same day. Sanford further argues that, while he was under illegal arrest, officers made their case against

him, which led to his custodial confession given on January 11, 1995, at 3:00 p.m.

■ ■ The trial court held that probable cause existed to arrest Sanford on January 9 because, on that day, officers had information from Sanford's sister and father that, after Ward's murder, Sanford possessed an antique .44 pistol which was owned by Minnie Ward and kept in her house. Regardless of whether this evidence constituted probable cause to arrest Sanford, Sanford simply fails to show any prejudice that resulted from his arrest and the confession that ensued from it. Consistent with *Strickland*, this court has stated that a defendant has the burden of providing facts that establish actual prejudice due to his attorney's conduct. *Cranford v. State*, 303 Ark. 393, 797 S.W.2d 442 (1990). Sanford himself concedes in his argument that, even without his confession, the State still had his sister Earlene's testimony that Sanford admitted killing Minnie Ward and had threatened to kill Earlene and her children if she told anybody. Sanford further concedes that, even if his confession had been eliminated from evidence, that omission might not have prevented his conviction. Nonetheless, he urges that the elimination of his detailed written statement still may well have prevented his being sentenced to death. Sanford offers no compelling evidence or argument to support this conclusion, and we have ruled that a conclusory allegation cannot be a basis for postconviction relief. *Sasser v. State*, 338 Ark. 375, 993 S.W.2d 901 (1999). Thus, we reject Sanford's conclusory argument here.

■ ■ Sanford next asserts that Howard, as trial counsel, was ineffective for failing to communicate to him the prosecutor's offer of life imprisonment without parole in exchange for a guilty plea. Basically, this issue involved a swearing match. Howard testified that he conveyed the State's offer to Sanford and his family, but Sanford and his family claimed that no such offer was ever made. The trial court specifically found that Howard's testimony was the more credible on this issue. In doing so, the trial court also mentioned the prosecutor's testimony that Howard made continuous attempts to secure a better offer than life without parole, but the prosecutor rejected those requests. The trial court concluded that Howard's efforts to obtain a better offer corroborated his version of what transpired. Our court has held that questions of credibility are within the trial court's discretion and will not be reversed absent an abuse of discretion. *Norman v. State*, 339 Ark. 54, 2 S.W.3d 771 (1999) (per curiam). Here, we cannot say the trial judge abused his discretion. Before leaving this point, we note, too, that Sanford does not allege he would have accepted the life-without-parole

offer, if it had been made, or that he would accept it even now.[1] Without such a showing, this court has held a defendant seeking postconviction relief should be denied because no prejudice is shown. *Rasmussen v. State*, 280 Ark. 472, 658 S.W.2d 867 (1983) (per curiam).

In another argument for reversal, Sanford claims Howard rendered ineffective assistance when he failed to call medical examiner personnel as witnesses to testify concerning the victim's time of death. He also questions Howard's failure to object to the State's use of the county coroner to testify as to the victim's time of death, and asserts the coroner had no medical degree or training to offer an expert opinion on the time issue. The time-of-death issue bore on whether Minnie Ward was alive at the time she was raped.

■ As noted by the State, to the extent Sanford's claim purports to challenge the sufficiency of the evidence to support his rape conviction, such claim cannot be entertained in this appeal because this court held on direct appeal that sufficient evidence of rape was shown. *Sanford*, 331 Ark. at 343, 962 S.W.2d at 340. Sufficiency challenges cannot be raised in Rule 37 proceedings. *O'Rourke v. State*, 298 Ark. 144, 153, 765 S.W.2d 916, 921 (1989).

■ Next, Sanford contends that Howard was ineffective when he failed to object to improper rebuttal testimony presented by the State. This argument is also meritless. Rule 37 is a postconviction remedy, and as such, does not provide a method for the review of mere error in the conduct of the trial or to serve as a substitute for appeal. *Nooner v. State*, 339 Ark. 253, 4 S.W.3d 497 (1999). At his original trial, Sanford implicated another person, Mingo Kennedy, as the person who actually killed Ward. He claimed Kennedy put a .380 caliber pistol to Sanford's head and made him enter Ward's house. He testified Kennedy shot Ward three times, took money from Ward's purse, and forced Sanford to have sex with Ward. Sanford claimed he had no gun and further said that he was afraid of Kennedy. State witness David Palmer provided rebuttal testimony to Sanford's story and testified that, on the day of Ward's murder, he observed what he thought was a gun in Sanford's inside pocket. Palmer further related Kennedy and Sanford were together and there was nothing unusual about the way they treated each other. In short, Palmer's testimony was proper rebuttal testimony, and Howard was not ineffective in choosing not to object to its introduction. Stated in other terms, counsel cannot be ineffective when

---

[1] Sanford's parents testified they would have urged him to take the offer.

he or she fails to make an argument which has no merit. *Monts v. State*, 312 Ark. 547, 851 S.W.2d 432 (1993).

■ The same can be said of Sanford's next argument where he suggests Howard should have objected to the prosecutor's closing remarks that the defense did not show Sanford was mentally retarded. Sanford argues that his psychologist testified that he had an IQ of 67, in the mildly mentally-retarded range. However, as underscored by the trial court, a factual dispute existed regarding the correctness of the psychologist's score since he was also tested at a full-scale IQ of 75 by other experts at Delta Counseling. Such a factual dispute was fair argument by the State, and it was within the jury's province to decide the issue. Again, to say Howard was ineffective in failing to object to the prosecutor's remarks on this issue is baseless.

■■ Sanford raises a sixth argument wherein he urges that Howard was ineffective when he failed to challenge on appeal the jury's finding that no mitigating circumstances existed. Sanford's jury found three aggravating circumstances, but no mitigating circumstances. Once again, he seeks to raise a direct-review question under the guise of ineffective assistance. *See O'Rourke*, 298 Ark. at 155, 765 S.W.2d at 923. In addition, this court has ruled that a jury's determination of mitigating circumstance is a finding of fact that lies within its province. *Hill v. State*, 331 Ark. 312, 962 S.W.2d 762 (1998). For these reasons, we hold Sanford's point has no merit.

■ In his seventh issue for reversal, Sanford claims his trial counsel was ineffective in failing to make the argument that Sanford's mental status fell within the current definition of a mentally retarded person, and, as such, the imposition of the death penalty violated the constitutional prohibition of cruel and unusual punishment. *See* Ark. Const. art. 2, § 9; U.S. Const. amend. 8. Sanford concedes this issue was not raised below, but asks us to recognize its viability here under the holding in *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995), since this case involves the death penalty. Our court has held that in death-penalty cases we will consider errors argued for the first time on appeal where prejudice is conclusively shown by the record, and this court would unquestionably require the trial court to grant relief under Rule 37. However, Sanford showed no conclusive right to Rule 37 relief on this point. In this respect, Sanford submits that the current definition of mentally retarded is set by the Diagnostic and Statistical Manual IV at a high IQ of 70, and that his expert showed Sanford had an IQ of 67.

The State's evidence, on the other hand, reflected Sanford's full-scale IQ was 75 — in the borderline range.

 The General Assembly enacted Act 420 of 1993, codified at Ark. Code Ann. § 5-4-618(a)(2) (Repl. 1997), which establishes a presumption of mental retardation when a defendant has an intelligence quotient of 65 or below. The statute further provides that no defendant with mental retardation at the time of committing capital murder shall be sentenced to death. Ark. Code Ann. § 5-4-618(b) (Repl. 1997). Sanford does not challenge the constitutionality of § 5-4-618. As we recently said in *Jones v. State*, 340 Ark. 390, 10 S.W.3d 449 (2000), Arkansas law fixes a rebuttable standard for mental retardation at a quotient of 65. Thus, it was appropriate for the jury to have considered the State's and Sanford's evidence when deciding any question bearing on the mental retardation issue. Clearly, Sanford established no conclusive right to Rule 37 relief, and for these reasons, we reject Sanford's claim of ineffective assistance on this issue.

 Finally, in Sanford's only meritorious contention, he argues Howard's ineffectiveness when, during the penalty phase of the trial, Howard failed to present mitigation evidence concerning Sanford's school records showing long-standing mental retardation, his age, medical records, family history, and jail records, reflecting commendations he had received. In the recent case of *Williams v. Taylor*, 120 S. Ct. 1495 (2000), the Court recognized that a trial counsel's failure to investigate and present substantial mitigating evidence during the sentencing phase of a capital murder trial can constitute ineffective assistance of counsel. In *Williams*, the defendant had been convicted of robbery and capital murder, and, based on his "probability of future dangerousness," he was sentenced to death. The Virginia Supreme Court affirmed, but in a later state habeas corpus proceeding, a trial judge found Williams' conviction valid, but because counsel had failed to discover and present significant mitigating evidence, the judge held Williams' right to effective assistance of counsel had been violated. The Virginia Supreme Court set aside the trial judge's decision, but, in a subsequent federal habeas proceeding, a federal judge agreed with the state trial judge's holding. The federal district court identified five categories of mitigating evidence that counsel had failed to introduce and concluded that, but for counsel's unprofessional errors, the result of the penalty proceeding would have been different. The district court's decision was overturned by the Fourth Circuit Court of Appeals, which in turn was reversed by the Supreme Court.

The Supreme Court held that Williams had a right — indeed, a constitutionally protected right — to provide the jury with the mitigating evidence that his trial counsel either failed to discover or failed to offer. *Id*. at 1513. The Court noted that counsel failed to conduct an investigation which would have shown Williams had been criminally neglected by his parents, beaten by his father, placed in custody of social services, and shown to be borderline mentally retarded. Such an investigation also would have shown commendations given Williams for helping to expose a drug-ring operation in prison, returning a guard's wallet, and being described as a "least likely [inmate] to act violent, dangerous, or in a provocative way." The *Williams* court held that whether or not those omissions were sufficiently prejudicial to have affected the outcome of sentencing, they clearly demonstrate that trial counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background. The Court further held that counsel's unprofessional service prejudiced Williams within the meaning of *Strickland*. Furthermore, the Court stated that the state court failed even to mention the sole mitigating argument trial counsel did advance — Williams had alerted police to a crime they otherwise would never have discovered — and concluded that, while this, coupled with prison records and guard testimony, may not have overcome a finding of future dangerousness, the graphic description of Williams' childhood, filled with abuse and provocation, or the reality that he was "borderline mentally retarded," might well have influenced the jury's appraisal of his moral culpability. *Id*. at 1515. Because Williams' prior violent behavior was a compulsive reaction, rather than the product of cold-blooded premeditation, the court decided Williams' mitigating evidence unrelated to dangerousness might have altered the jury's selection of penalty, even it if did not undermine or rebut the prosecution's death-eligibility case.

The Eighth Circuit Court of Appeals has decided two cases that are helpful to our analysis here, and while rendered earlier, are consistent with the rationale in *Williams*. *Hill v. Lockhart*, 28 F.3d 832 (8th Cir. 1994); *Pickens v. Lockhart*, 714 F.2d 1465 (8th Cir. 1983). In *Pickens*, the court recognized the settled rule that the failure to investigate, discover, and present mitigating evidence has been deemed ineffective assistance numerous times. *Id*. at 1467–1468. There, the court noted that while the decision not to investigate "all lines of defense" can in some cases be considered trial tactics, a "total abdication of duty" to prepare a mitigation case "should never be viewed as permissible trial strategy." The court further held that, given the severity of the potential punishment and

"the reality that the life of [counsel's] client [is] at stake, . . . it [is] incumbent to offer mitigating proof." *Id.*

The Eighth Circuit in *Hill* related that trial counsel had not bothered to get medical and psychiatric records which would have shown a decades-long history of mental illness and the defendant's consistent positive response to anti-psychotic medication. In ruling that this failure amounted to ineffective assistance, the court stated "it was the duty of Hill's lawyers to collect as much information as possible about Hill for use at the penalty phase of his . . . trial." *Hill,* 28 F.3d at 845. Because the *Hill* court found that it was likely that the jury would have at least considered Hill's impaired capacity as a mitigating factor, had it known of this evidence, the court could hardly imagine Hill had not been prejudiced by his lawyers' default. The court further concluded that such failure or default had shaken its confidence in the jury's determination that no mitigating circumstances existed. *See id.* at 846.

In the present case, Howard largely conceded that he did little in putting on proof of mitigation during the penalty phase, and that the reasons may have been because he was "quite disappointed" in the jury's guilty verdicts, and "he was tired." In fact, while he was well aware that, during the penalty phase, the prosecutor painted Sanford as a remorseless, heartless, cold-blooded person, Howard guessed "he did not do anything" to counter the State's presentation in the penalty phase.[2] Moreover, when asked by the trial court if he intended to ask for AMCI 1009 — the capital murder, mitigation instruction based on mental retardation — Howard responded, "Yes, Your Honor, *I had not even thought about it,* but I am quite sure I am going to offer that." (Emphasis added.)

From the colloquy between the trial court and counsel, it became obvious that, although he could have offered additional evidence at the penalty stage, Howard had made no plans to offer any more evidence except the testimony of Sanford's parents. Nor did Howard recall his expert to expound further on Sanford's mental status, although he did repeat for the jury some of the expert's prior trial testimony, which reflected that witness' opinion that Sanford was mentally retarded when, at age sixteen, he killed Minnie Ward. Sanford's parents' testimony was the only additional evidence bearing on mitigating circumstances, and it basically indicated Sanford was young, had been a good son, had a mental

---

[2] Howard said that he had tried three capital murder cases, but this was the first one where the death penalty was imposed.

problem, and his life was worth saving.[3]

Other proof bearing on mitigation was available, but was not investigated or discovered by Howard. Howard admitted he made no effort to obtain Sanford's school records, jail records, medical records, or family history. While he had a social worker available to him, Howard never considered asking the worker to assist him in developing mitigation.

Sanford's school records showed Sanford had been in special education, and had been considered mildly mentally retarded during much of his time in school. Sanford was shown to have a good record with only one disciplinary incident. His medical history reflects he almost suffocated to death as a child, when a load of cotton seed fell on him; Sanford's mother opined Sanford acted a "bit slower" after the cotton-seed incident. Later he suffered a blow to the head with a two-by-four wielded by his sister. Proof also available, but not investigated by Howard, showed siblings and other family members to be either slow or retarded.

In sum, the record reveals that Howard placed most of his energies in the guilt phase of Sanford's trial, and he conducted virtually no investigation in an effort to garner proof to show mitigation. Yet, counsel's primary function in the penalty phase of a capital trial is to "neutralize the aggravating circumstances" presented by the State and "present mitigating evidence." *See Parker v. Bowersox*, 188 F.3d 923, 929 (8th Cir. 1999).

 In *Pickens*, cited above, the court rejected the idea that a trial counsel's failure to offer significant mitigating evidence can be a matter of strategy and tactics; it is only after a full investigation of all the mitigating circumstances that counsel can make an informed, tactical decision about which information would be the most helpful to the client's case. *Pickens*, 714 F.2d at 1467. The *Pickens* court, quoting from *Wolfs v. Britton*, 509 F.2d 304 (8th Cir. 1975), which cited the ABA standard, stated the following:

> The lawyer also has a substantial and important role to perform in raising mitigating factors both to the prosecutor initially and to the court at sentencing. *This cannot effectively be done on the basis of broad general emotional appeals* or on the strength of statements made to the lawyer by the defendant. Information concerning the defend-

---

[3] It is also worth noting that the prosecutor in this case testified at the Rule 37 hearing that he had never expected the jury to impose the death penalty, and that in his experience, Chicot County was the "least likely [county] in which the State could get the death penalty."

ant's background, education, employment record, mental and emotional stability, family relationships, and the like, will be relevant, as will mitigating circumstances surrounding the commission of the offense itself. *Investigation is essential* to fulfillment of these functions.(Emphasis added.)

*Pickens*, at 1466, quoting 1 ABA Standards for Criminal Justice, Standard 4-4.1, Commentary, at 4-55 (2d ed. 1980). Attorney Howard's failure to investigate caused the jury not to have before it all the available significant mitigating evidence, and this failure raises "a reasonable probability that the result of the sentencing proceeding would have been different if competent counsel had presented and explained the significance of all the available evidence." *Williams*, 120 S. Ct. at 1516 (internal quotations omitted).

For the foregoing reasons, we affirm in part and reverse and remand in part for resentencing.