KAREN R. BAKER, Justice. _|jOn July 19, 2007, a Sharp County jury convicted appellant, Steven Victor Wertz, of two counts of capital murder and sentenced him to death. We affirmed his conviction and sentence in Wertz v. State, 374 Ark. 256, 287 S.W.3d 528 (2008). The relevant facts as we recounted in Wertz’s direct appeal are as follows: On the morning of December 31,1986, Kathy and Terry Watts were found dead in their Ash Flat home by Kathy’s mother, Judy Bone. Ms. Bone found their almost one-year-old son, alive, near his father’s body. During the investigation into the Wattses’ deaths, it was discovered that a child-custody matter regarding another child was ongoing between Terry Watts and Wertz’s then-wife, Belinda. Ultimately, Wertz became the primary suspect, and, the same day that the bodies were discovered, investigators traveled to Oklahoma, where the Wertzes resided, to inquire. At that time, Wertz told investigators that he and Jamie Snyder, Jr., the son of a friend, spent the night at Wertz’s home on December 30, 1986. Wertz claimed that he had been sick that evening and that he had gone to the Tinker Air Force Base clinic the next day for treatment, which records corroborated. It appears from the record that, despite having suspects, police neither arrested nor charged anyone in connection with the murders until much later. | sin spring 2001, David Huffmaster of the Sharp County Sheriffs Department began to review the case file on the Wattses’ murders after being contacted by Kathy Watts’s sister, Chris Lindner, at a school function. In spring 2002, Huffmaster essentially reopened the case and, over the course of the next few years, conducted interviews of some of the persons previously interviewed and involved in the original investigation. Huffmaster’s interviews of both Belinda Stewart, who had been married to Wertz at the time of the crimes, but had since divorced him and remarried, and Jamie Snyder, Jr., yielded statements that led to an arrest warrant being issued for Wertz on April 27, 2006. On April 28, 2006, a felony information was filed, charging Wertz with two counts of capital murder. Id. at 258-59, 287 S.W.Bd at 530-33. On January 16, 2009, Wertz filed his Rule 37.5 petition in the Sharp County Circuit Court alleging that his retained trial counsel’s, Greg Bryant’s, performance was constitutionally deficient and asserting twenty-three allegations of ineffective assistance of counsel. On April 9-10, 2012, the circuit court conducted a hearing. On May 17, 2012, the circuit court denied Wertz’s petition. Wertz now brings this appeal and presents two issues for review: (1) the circuit court erred in denying Wertz’s Rule 37 petition because Wertz received ineffective assistance of counsel in the guilt phase of his trial; and (2) the circuit court erred in denying Wertz’s Rule 37 petition because Wertz received ineffective assistance of counsel in the sentencing phase of his trial. “On appeal from a circuit court’s ruling on a petitioner’s request for Rule 37 relief, this court will not reverse the circuit court’s decision granting or denying post-conviction relief unless it is clearly erroneous. E.g., Prater v. State, 2012 Ark. 164, at 8, 402 S.W.3d 68, 74. A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. Id., 402 S.W.3d at 74.” Mason v. State, 2013 Ark. 492, at 1-2, 430|j¡S.W.3d 759, 761. Our standard of review requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Claims of ineffective assistance of counsel are reviewed under the following standard: A convicted defendant’s claim that counsel’s assistance was so defective as to require reversal of a conviction has two components. First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Burton v. State, 367 Ark. 109, 111, 238 S.W.3d 111, 113 (2006) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052). The reviewing court must indulge in a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance. Id. The petitioner claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel’s perspective at the time of trial, could not have been the result of reasonable professional judgment. See id. Therefore, Wertz must first show that counsel’s performance fell below an objective standard of reasonableness and then that counsel’s errors actually had an adverse effect on the defense. Id. Wertz must satisfy both prongs of the test, and it is not necessary to determine whether counsel was deficient if Wertz fails to demonstrate prejudice as to an alleged error. Kelley v. State, |42011 Ark. 504, 2011 WL 5995530. Further, with respect to an ineffective-assistance-of-counsel claim regarding the decision of trial counsel to call a witness, such matters are generally trial strategy and outside the purview of Rule 37.1. Banks v. State, 2013 Ark. 147. Where a petitioner alleges ineffective assistance of counsel concerning the failure to call witnesses, it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. Moten v. State, 2013 Ark. 503 (per curiam). In order to demonstrate prejudice, the petitioner is required to establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. Hickey v. State, 2013 Ark. 237, 428 S.W.3d 446. Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. Id. Nonetheless, such strategic decisions must still be supported by reasonable professional judgment. Id. Finally, “[w]hen assessing an attorney’s decision not to call a particular witness, it must be taken into account that the decision is largely a matter of professional judgment which experienced advocates could endlessly debate, and the fact that there was a witness or witnesses that could have offered testimony beneficial to the defense is not in itself proof of counsel’s ineffectiveness. Huls v. State, [301 Ark. 572, 785 S.W.2d 467 (1990)]; Dumond v. State, 294 Ark. 379, 743 S.W.2d 779 (1988).” Johnson v. State, 325 Ark. 44, 49, 924 S.W.2d 233, 236 (1996). Points on Appeal I.Ineffective Assistance of Counsel: Guilt Phase IflFor his first point on appeal, Wertz makes several arguments regarding ineffective assistance of counsel at the guilt phase. Specifically, Wertz asserts that Bryant should not have worked alone, but should have retained a second attorney to assistance him in handling Wertz’s case as prescribed by the American Bar Association (hereinafter ABA) guidelines. Further, Wertz asserts that Bryant took $35,000 from Wertz that was intended for the express use of hiring a second attorney, Jeff Rosenzweig. Wertz contends that because Bryant failed to retain co-counsel and failed to retain necessary services, Bryant was constitutionally deficient on seven subpoints: 1. Bryant failed to review the physical evidence held by the State. 2. Bryant failed to retain a forensic investigator to review the physical evidence. 3. Bryant failed to retain and have a forensic pathologist to review the autopsy results. 4. Bryant failed to properly prepare and present evidence on the “time and distance” argument. 5. Bryant failed to investigate Wertz’s contention that the footprint on the door of the home was too small to be Wertz’s shoe. 6. Bryant failed to interview the following witnesses who had knowledge relevant to Wertz’s defense: Mark Sealey (crime scene technician), Jeff Quails (Sharp County coroner at the time of the murders), Jamie Snyder’s ex wife, and countless individuals Wertz knew over his lifetime who should have been called. 7. Bryant failed to spend sufficient time with Wertz to prepare him to testify at trial and enable him to understand the nature of the trial process. Pretrial Investigation Wertz’s first three subpoints assert that Bryant’s pretrial investigation was deficient. First, Bryant did not properly investigate the physical evidence. Second, Bryant did not hire |fia forensic investigator to examine the physical evidence including the shotgun, the shoe print, the victim’s front door, shot gun shells, and the shot gun pattern on the front door. Third, Bryant did not retain a forensic pathologist to review the autopsy reports. Wertz asserts that because Bryant did not perform an adequate investigation including retaining forensic experts, Wertz was prejudiced. The State responds that Wertz has failed to demonstrate that Bryant’s representation was deficient and asserts that Wertz’s claims are conelusory. In reviewing an assertion of ineffective assistance of counsel based on failure to investigate, a petitioner must describe how a more searching pretrial investigation would have changed the results of his trial. Fernandez v. State, 2011 Ark. 418, 384 S.W.3d 520. There is a strong presumption that trial counsel’s conduct falls within the wide range of reasonable professional assistance, and the burden is entirely on the claimant to pro- vide facts that affirmatively support his claims of prejudice. Shipman v. State, 2010 Ark. 499, 2010 WL 5185781 (per cu-riam). Neither conelusory statements nor allegations without factual substantiation are sufficient to overcome the presumption and cannot provide a basis of postconviction relief. Id. General assertions that counsel did not aggressively prepare for trial are not sufficient to establish an ineffective-assistance-of-counsel claim. Id. We now turn to the circuit court’s order denying Wertz’s claim regarding Bryant’s pretrial investigation. The circuit court’s order stated: The court finds this allegation [of lack of investigation] is a conelusory statement by petitioner and as such, cannot be the basis of postconviction relief. Sparkman v. State, 373 Ark. 45, 281 S.W.3d 277 (2008). There was testimony petitioner spent time with the lead investigator going over evidence in Sharp County as well as having evidence reviewed by the State Crime Lab. _li • • • Petitioner is making conelusory statements without offering any proof and as such, cannot be the basis of post-conviction relief. Sparkman, supra. Petitioner’s allegations here are highly questionable, even assuming such an analysis was possible. Petitioner claims an expert should have been retained to test a shotgun (which was found in 1987), which no longer existed at the time of petitioner’s arrest. [[Image here]] Petitioner has asserted that defense counsel failed to procure an independent medical examiner to rebut the testimony of Dr. Charles Kokes concerning lividity and time of death of Kathy Watts. This allegation is conelusory and not supported by any proof demonstrating that an independent medical examiner would have rebutted the testimony of Dr. Kokes or how the proceedings would have been different had such a. witness been called. As such, this allegation fails and cannot be the basis for post-conviction relief. Sparkman, supra. Here, Wertz contends the circuit court erred and claims that had Bryant retained these forensic experts, Bryant would have discovered exculpatory evidence. However, the record demonstrates that Wertz made only general assertions that do not provide sufficient factual substantiation for his claims of prejudice. Wertz has made conclusory allegations and has failed to demonstrate that a more searching investigation would have changed the results of his trial. In reviewing the circuit court’s order, we find no error as to this claim. “Time and Distance” Defense Wertz’s fourth subpoint of error during the guilt phase alleges that Bryant rendered ineffective assistance of counsel when Bryant failed to present evidence of an alternative “time and distance” argument that would demonstrate the physical impossibility that he committed the crimes. Wertz contends that Bryant performed a “shoddy investigation” and failed to adequately investigate the route, weather conditions, and vehicle driven from Guthrie, [sOklahoma to Ash Flat, Arkansas. Further, Wertz contends that if Bryant had been properly prepared for trial, Bryant would have been able to demonstrate that the trip could not have taken place during the time frame the State asserted and that the State’s timeline and Wertz’s co-defendant’s, Snyder’s, timeline were inconsistent. The State responds that the circuit court should be affirmed because Bryant reasonably presented evidence of Wertz’s “time and distance” defense as well as through the cross-examination of multiple witnesses and his own witnesses. In denying Wertz’s claim, the circuit court held that [t]he weather conditions on or about the time of the murders was in evidence at trial. Bryant, while not having a representative from the actual car manufacturer, put on testimony that the one-way trip from Oklahoma to Ash Flat trip took two tanks of gasoline. Consequently, the court further finds Bryant acted reasonably in the interviews and made reasonable efforts in attempting to locate and interview witnesses whose testimony was potentially exculpatory. Wertz asserts that the circuit court erred. To prevail, Wertz must describe how a more searching pretrial investigation would have changed the results of his trial. Fernandez v. State, 2011 Ark. 418, 384 S.W.3d 520. Here, the record demonstrates that Bryant cross-examined the following witnesses about the time of death of the victims which went to discredit the State’s timeline: Arkansas State Police Sergeant Steve Huddleston, former Sharp County Chief Deputy Dennis Burton, and Joe Stidman, a reserve officer with the Sharp County Sheriffs Office. Huddle-ston, Burton, and Stidman all testified regarding their involvement in the investigation, the Polaroid pictures of the crime scene, and the arrival time of Mark Sealey, the medical examiner technician, who came to retrieve the bodies. Additionally, Dr. Charles Kokes testified about the estimated time of death and the Polaroid pictures that were taken |9at the scene. Bryant cross-examined each of these witnesses regarding the timeline that Wertz argues was not adequately addressed at trial. Additionally, Bryant presented his own witness, Tyson Spradlin, his associate and assistant, regarding the time it took to travel from Ash Flat, Arkansas, to Guthrie, Oklahoma. Spradlin testified about the make and model of his car, the gas used, the fastest route, and the time it took him to travel. Accordingly, Bryant put evidence before the jury refuting the State’s timeline of the case. Based on our standard of review, we cannot say the circuit court clearly erred. Boot/Footprint For his fifth subpoint of error alleging ineffective assistance of counsel during the guilt phase of the trial, Wertz asserts that Bryant was ineffective for failing to investigate that the footprint on the Wattses’s door used in the State’s prosecution could not have been his footprint because it was too small and the pattern did not match the soles of his boots. The circuit court held that [t]he allegation of deficient conduct by not calling an expert with regard to a shoe print not matching the size of petitioner fails because the circumstances regarding the evidence was before the jury. At trial, during his cross-examination of Huffmaster, Wertz established that he wore a size 13 shoe and the footprint found was a size 9. Here, the record from the Rule 37 hearing demonstrates that Wertz has failed to present evidence to support his claim and that he makes conclusory allegations. In reviewing the circuit court’s ruling on this claim, we find no error. Failure to Interview Witnesses | inWertz’s sixth subpoint of error in the guilt phase is that he received ineffective assistance of counsel when Bryant failed to present the following witnesses: Mark Sealey, Jeff Quails, Jamie Snyder’s ex-wife (the accomplice’s ex-wife), and countless individuals whom Wertz knew. The circuit court denied Wertz’s argument on this point and held, According to the testimony at the evi-dentiary hearing, Bryant was not able to locate Mark Sealey, however, the substance of his testimony regarding his opinion as to time of death was put before the jury. Additional testimony concerning the coroner’s report was also presented at the evidentiary hearing, however, the report corroborated Dr. Kokes’ estimated time of death. [[Image here]] Petitioner alleges that trial counsel failed to adequately investigate the physical evidence held by the State of Arkansas, theorizing that an adequate investigation would have disclosed that items of physical evidence were exculpatory to the guilt of petitioner and that physical evidence could have been used by defense counsel to attack the credibility of the State’s chief investigator, the alleged accomplice James Snyder, Jr. and petitioner’s ex-wife, Belinda Wertz, whose testimony was adverse to petitioner. The court finds this allegation is a conclusory statement by petitioner and as such, cannot be the basis of postcon-viction relief. Sparkman v. State, 373 Ark. 45, 281 S.W.3d 277 (2008). There was testimony petitioner spent time with the lead investigator going over evidence in Sharp County as well as having evidence reviewed by the State Crime Lab. In reviewing this claim, “[i]t is incumbent on ... [Wertz] ... to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence.” Shipman, 2010 Ark. 499, at 4, 2010 WL 5185781. In order to demonstrate prejudice, Wertz was required to establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. Hickey, 2013 Ark. 237, 428 S.W.3d 446. At the Rule 37 hearing, Wertz did not call any of these witnesses or submit affidavits with their testimony. Thus, Wertz asserts no more than conclusory statements in this regard, and In we affirm the circuit court on this claim. Failure to Prepare Wertz For his final allegation of ineffective assistance of counsel at the guilt phase, Wertz claims that Bryant failed to spend sufficient time with Wertz to prepare him to testify and enable him to understand the trial process. An attorney’s advice to his or her client is not grounds for an ineffective-assistance-of-counsel claim. Whether a defendant testifies is not a basis for postconviction relief. Dansby v. State, 347 Ark. 674, 679, 66 S.W.3d 585, 588 (2002). Further, the accused has the right to choose whether to testify on his own behalf. Chenowith v. State, 341 Ark. 722, 19 S.W.3d 612 (2000) (per curiam). Counsel may only advise the accused in making the decision, and the decision to testify is purely one of strategy. Id. Therefore, we affirm the denial of Wertz’s claim on this point. Based on the discussion above, we do not find that the circuit court erred. Wertz did not provide support for his con-clusory claims that counsel was ineffective. Likewise, there has been no showing that Bryant committed any specific error that prejudiced the defense because Wertz did not specify with facts how the defense was prejudiced. As discussed infra, based on Strickland, Wertz must show that, but for counsel’s errors, the fact-finder would have had a reasonable doubt respecting guilt and that the decision reached would have been different absent the errors. In reviewing the record before us and Wertz’s argument, we are unpersuaded that Wertz has met his burden, and we affirm the circuit court’s denial of this claim. II. Ineffective Assistance of Counsel: Sentencing Phase 112For his second point on appeal, Wertz contends that the circuit court erred when it denied Wertz’s claim that he received ineffective assistance of counsel during the sentencing phase of his trial because Bryant did not adequately investigate and present mitigation evidence. Citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Sanford v. State, 342 Ark. 22, 25 S.W.3d 414 (2000); and Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), Wertz asserts that Bryant had an absolute duty to fully investigate all possible mitigating circumstances despite Wertz’s instructions. Wertz contends that this failure to investigate fulfills both prongs of Strickland — deficient performance and prejudice — and urges this court to reverse the circuit court. The State responds that Wertz mischar-acterizes Bryant’s performance and testimony at the Rule 37 hearing, as Bryant did investigate and present mitigation evidence. Further, the State responds that Wertz’s argument is without merit because the record demonstrates that Wertz specifically instructed Bryant to not investigate and present mitigation evidence. Finally, the State asserts that we should affirm the circuit court because Wertz has failed to demonstrate prejudice. In reviewing an assertion of ineffective assistance of counsel for the failure to call a certain witness, the objective is to determine whether the failure resulted in actual prejudice that denied the petitioner a fair trial. Moten v. State, 2013 Ark. 503 (per curiam). The decision to call or not to call a particular witness is largely a matter of professional judgment. The fact that there was a witness or witnesses who could have offered beneficial testimony is not, in itself, proof of counsel’s ineffectiveness. Noel v. State, 342 Ark. 35, 26 S.W.3d 123 (2000). Further, in reviewing an assertion of ineffective assistance of counsel based on counsel’s failure |1sto investigate and present mitigation evidence, the failure to conduct any investigation will not pass the constitutional standard we require; however, reasonable strategic choices do not rise to the level of satisfying Strickland. See Sanford v. State, 342 Ark. 22, 25 S.W.3d 414 (2000). In Sanford we held that, the attorney’s “failure to investigate caused the jury not to have before it all the available significant mitigating evidence” and further held that such failure raised “a reasonable probability that the result of the sentencing proceeding would have been different if competent counsel had presented and explained the significance of all the available evidence.” Id. 342 Ark. at 34, 25 S.W.3d at 422 (citing Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Finally, in order to satisfy Strickland, Wertz must meet both prongs, deficient performance and prejudice. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. See Stiggers v. State, 2014 Ark. 184, 433 S.W.3d 252(internal citations omitted). Prejudice must be established by demonstrating that there is reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. With these standards in mind, we turn to the circuit court’s order and its denial of Wertz’s claim on his second point: Petitioner alleges Bryant failed to interview witnesses who could have provided mitigating evidence for the petitioner at the punishment stage of the trial. As stated by the court in the court’s Findings of Facts and Conclusions of Law 3 above, the court finds that Bryant may have been deficient in his representation of his client in the mitigation stage of his trial by not calling at least one other witness, not a family member, who could have testified as to a good trait of petitioner. The court finds that this omission did not prejudice the petitioner to the extent that the decision reached by the jury would have been different. |14To review the circuit court’s order and correctly determine this issue, we must look at all the evidence adduced at trial and at the Rule 37 hearing. Howard v. State, 367 Ark. 18, 238 S.W.3d 24. At trial, during the sentencing phase, Bryant presented two mitigation witnesses: Steve Huddleston and Wertz’s wife, Judy Wertz. First, Huddleston testified that Wertz may not have known that the victims’ one-year old baby was in the house at the time of the murders, in an attempt to convince jurors that one of the aggravators had not been met. Second, Bryant called Judy and she testified regarding their courtship; that Wertz married her as she had been a widow; and Wertz was religious, was a hard worker, treated people personally and professionally with respect, provided a stable and loving home, was a grandfather to her three grandchildren who lived next door to them in Florida, and was interested in music. At the Rule 37 hearing, Bryant testified that Wertz did not give him names of individuals to call as mitigation witnesses and was not forthcoming with personal information or his life history. Bryant further testified that through his handling of the case, he discovered friends and coworkers of Wertz’s, but assessed that none of them would have provided favorable testimony for Wertz. Additionally, Bryant testified that he contacted Wertz’s children. Wertz’s son was not willing to testify on Wertz’s behalf and Wertz’s daughter attended the trial, but once she arrived she changed her mind and was not interested in testifying on his behalf. Bryant also stated that Wertz’s brother would not have been favorable on Wertz’s behalf. Further, Judy Wertz’s daughter was not willing to testify on Wertz’s behalf. Finally, Bryant testified that Wertz instructed Bryant to not investigate or present 1^mitigation evidence and also that Wertz did not want to take the stand in either the guilt or the sentencing phase.[1] Bryant also testified that Wertz had told Bryant he would rather be executed than spend the remainder of his life in jail. Also at the Rule 37 hearing, Wertz testified that he did not instruct Bryant to not put on or investigate mitigation evidence and also testified that Bryant never explained the mitigation process to him. Wertz further testified that Bryant did not keep him informed. Judy testified that she understood that Rosenzweig was going to handle the mitigation but |1fiwas not aware that there were two different phases at trial. Additionally, at the Rule 37 hearing, in addition to the two mitigation witnesses at trial, Wertz presented testimony from three additional witnesses: Ed Briggs, Stacy Worthington Chism, and Teri Chambers. First, Briggs testified that he had known Wertz for over thirty years, that the two had met in Vietnam, and that Briggs relied on Wertz in the field in Vietnam. Briggs also testified to a story about Wertz protecting a child and making sure he was safe after an ambush. Several years later, the two were both employed as police officers together, and Briggs testified about Wertz having helped him and fellow officers on the scene of a traffic stop when he called for assistance. Second, Chism testified that she was a mitigation specialist with the Arkansas Public Defender’s Commission and, in preparation for Wertz’s Rule 37 hearing, investigated Wertz’s history. She testified regarding the investigation that she would have performed at trial including but not limited to, family history, Wertz’s first wife, Wertz’s children, military experience, work history, mental retardation, psychological evaluation, school history, former teachers, and photos of his family history. Chism also testified regarding photos she had discovered during her investigation including, but not limited to, Wertz as a child, Wertz with his children, Wertz with his first wife, Wertz in Vietnam, Wertz with his current wife, Judy, and newspaper clippings from when Wertz was a swimmer in high school. The photos were introduced into evidence. Third, Chambers, an attorney with the Arkansas Public Defender Commission, Capital Conflicts Office, testified as to the ABA Guidelines regarding the investigation of mitigation | ,7evidence. She testified about the importance of investigating a defendant’s history and presenting that information to the jury. Turning to Wertz’s argument on appeal, Wertz asserts that his ease is analogous to Sanford, alleges that Bryant abdicated his duty to investigate, and argues that the outcome would have been different if the jury had been fully informed of the various mitigating factors. However, this argument is flawed for two reasons. First, unlike the record in Sanford, the record in this case demonstrates that Bryant presented some mitigation evidence. In Sanford, at the Rule 37 hearing, Sanford’s counsel largely conceded that he did little in putting on proof of mitigation during the penalty phase, and that the reasons may have been because he was ‘quite disappointed’ in the jury’s guilty verdicts, and ‘he was tired.’ In fact, while he was well aware that, during the penalty phase, the prosecutor painted Sanford as a remorseless, heartless, cold-blooded person, [Sanford’s counsel] guessed “he did not do anything” to counter the State’s presentation in the penalty phase. Moreover, when asked by the trial court if he intended to ask for AMCI1009 — the capital murder, mitigation instruction based on mental retardation — Howard responded, Tes, Your Honor, I had not even ... thought about it, but I am quite sure I am going to offer that.’ [[Image here]] From the colloquy between the trial court and counsel, it became obvious that, although he could have offered additional evidence at the penalty stage, [Sanford’s counsel] had made no plans to offer any more evidence except the testimony of Sanford’s parents. [Sanford’s counsel] admitted he made no effort to obtain Sanford’s school records, jail records, medical records, or family history. While he had a social worker available to him, Howard never considered asking the worker to assist him in developing mitigation. Id., at 32, 25 S.W.3d at 421. Here, Bryant did present mitigation evidence. Accordingly, Wertz’s case is 1 ^distinguishable from the Sanford case. Second, we do not find Wertz’s case analogous to Sanford because at Wertz’s Rule 37 hearing, Wertz failed to present potential mitigation evidence that would have likely caused the jury to reach a different result. At the Rule 37 in Sanford, extensive mitigation evidence was presented that had been omitted from Sanford’s trial: Sanford’s school records showed Sanford had been in special education, and had been considered mildly mentally retarded during much of his time in school. Sanford was shown to have a good record with only one disciplinary incident. His medical history reflects he almost suffocated to death as a child when a load of cotton seed fell on him; Sanford’s mother opined Sanford acted a “bit slower” after the cotton-seed incident. Later he suffered a blow to the head with, a two-by-four wielded by his sister. Proof also available, but not investigated by [Sanford’s counsel], showed siblings and other family members to be either slow or retarded. Id., 342 Ark. at 33, 25 S.W.3d at 421. In contrast, at Wertz’s Rule 37 hearing, little potential mitigating testimony was presented. Wertz presented three mitigation witnesses that did not testify at the first trial, Briggs, Chism and Chambers, and the record fails to demonstrate that there was a reasonable probability that the jury would have reached a different result based on this Rule 37 testimony. Briggs stated that he would have testified regarding his relationship with Wertz, Wertz’s military service, and redeeming personal qualities through personal stories. However, the record also demonstrates that Wertz had lied about military service and recognition, even forging military records, and if Briggs had testified, then the State would have been able to cross-examine him about Wertz’s dishonesty. Further, although Chism testified about how she would conduct her mitigation investigation and the evidence she had discovered about Wertz, including the introduced |13photos, this testimony did not amount to specific mitigation evidence demonstrating that Wertz was prejudiced.[2] Chism testified regarding the family history, the cousins, the work history, and the “50 years of life that were not covered by the testimony of Judy Wertz” but did not present any specific evidence that would likely change the outcome. Finally, Chambers did not provide any testimony specific to Wertz; rather, she only discussed the ABA guidelines and the investigation that should have been conducted. Here, this is not a situation where counsel totally failed to investigate and put forth mitigation evidence as in Sanford. Bryant produced two mitigation witnesses who testified about Wertz’s general good character, his work ethic, his love for and involvement with his family, and the fact that Wertz was not aware that the victims’s one-year old son was at the scene when the murders took place. Also, despite whether counsel was deficient on investigating and presenting sufficient mitigation, Wertz’s case is distinguishable from Sanford’s case because, Wertz has failed to present specific evidence to demonstrate prejudice arose and demonstrate a reasonable probability that the information uncovered with further investigation would have changed the outcome. We next turn to Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), which the Sanford decision relied heavily upon. Wertz’s case is also distinguishable from Williams. In Williams, the evidence was much more substantial than in the present case: | gpExisting documents in Williams dramatically described mistreatment, abuse, and neglect during [the appellant’s] early childhood, as well as testimony that he was ‘borderline mentally retarded,’ had suffered repeated head injuries, and might have mental impairments organic in origin. Other omitted evidence showed that the appellant did not advance beyond sixth grade in school, his parents had been imprisoned for the criminal neglect of the appellant and his siblings, he had been severely and repeatedly beaten by his father, he was in the custody of the social services bureau for two years during which he had a stint in an abusive foster home, and he was returned to the custody of his parents after they were released from prison. In addition, the appellant had received commendations in prison for helping to crack a prison drug ring and for returning a guard’s missing wallet, and prison guards were willing to testify that he was among the inmates least likely to act in a violent or dangerous way. Williams v. State, 347 Ark. 371, 379, 64 S.W.3d 709, 716 (2002) (citing Williams v. Taylor, 529 U.S. at 370, 120 S.Ct. 1495). Also, in support of his claim, Wertz refers us to the United States Supreme Court’s decision in Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). However, Wertz’s case is also distinguishable from Wiggins. In Wiggins, the mitigating evidence counsel failed to discover was “powerful”: Wiggins experienced severe privation and abuse in the first six years of his life while in the custody of his alcoholic, absentee mother. He suffered physical torment, sexual molestation, and repeated rape during his subsequent years in foster care. The time Wiggins spent homeless, along with his diminished mental capacities, further augment his mitigation case. Wiggins, 539 U.S. at 534, 123 S.Ct. 2527. The Supreme Court held that “[g]iven both the nature and the extent of the abuse petitioner suffered, we find there to be a reasonable probability that a competent attorney, aware of this history, would have introduced it at sentencing in an admissible form.” Id. at 535, 123 S.Ct. 2527. Having reviewed Wertz’s ineffective-assistance-of-counsel claim regarding the investigation of mitigation evidence, we find no merit in Wertz’s argument. Wertz contends, |aiwith no factual substantiation, the outcome would have been different if Bryant had investigated and presented mitigation evidence. “When a defendant challenges a death sentence, the question is whether there is a reasonable probability that, absent the errors, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. Hill v. Lockhart, 28 F.3d 832 (8th Cir.1994) (citing Strickland v. Washington, supra).” Williams v. State, 347 Ark. 371, 379, 64 S.W.3d 709, 716. Wertz has failed to meet this burden, and based on our standard of review, we find no error and affirm. Affirmed. Special Justice ANDREW FULKERSON and HART, J., concur in part and dissent in part. GOODSON, J., not participating. . We note that Wertz's waiver is contained in the trial record: Defense Counsel: Judge, there are two things I want to put on the record. The first one is that early on into this-my representation of Mr. Wertz he instructed me not to conduct a mitigation investigation. And I don’t think it’s necessary that I go on record as to the reasons why. The Court: It's up to him. Mr. Bryant: He instructed me not to go into any mitigating events anyway but there— as opposed to an investigation which— that encompasses the whole different matter and the other thing, Your Honor is that Mr. Wertz, both at the guilt phase and now at the penalty phase has decided not to take the witness stand. The Court: Is that correct? Defendant: Sir, what? The Court: Is that correct? Defendant: Yes. . At the Rule 37 hearing, the State introduced a psychologist’s report as the witness was ill and unable to attend the hearing. The report provided that Wertz did not display any significant psychiatric symptoms, including PTSD. The report also stated that Wertz had no previous history for any significant psychiatric impairments. Finally, the report stated that Wertz would likely not make a good witness on his own behalf.