Cite as 2024 Ark. App. 255

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CR-23-586

| | | |
|---|---|---|
| | | Opinion Delivered April 17, 2024 |
| BILLY HOOVER | | |
| | | APPEAL FROM THE CRAWFORD |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. 17CR-20-361] |
| V. | | |
| | | HONORABLE MICHAEL MEDLOCK, |
| | | JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**STEPHANIE POTTER BARRETT, Judge**

Billy Hoover appeals the Crawford County Circuit Court's order denying his petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure (2022). On appeal, he argues that his trial counsel was ineffective because counsel failed (1) to include the 2012 nolle prosequi order in his direct-appeal record; (2) to object to entry of the 2012 nolle prosequi order for lack of good cause; (3) to move for a mistrial when Deputy Keith Smith testified that he arrested Hoover after Hoover refused to give a statement; and (4) to call Hoover's sister, Melissa Black, during the trial to testify that their cousin, David Pullin, was an alternative suspect in the rape of Hoover's children rather than Hoover. We affirm the denial of Hoover's petition for postconviction relief.

Hoover was arrested on May 5, 2020, and charged with two counts of rape; the victims were his daughter, MC1, and his son, MC2. The affidavit for the arrest warrant attached to

the information alleged that Hoover had raped his children on or about March 1 to July 30, 2011, when the children were five and six years old, respectively.

Hoover's counsel filed a motion to dismiss for lack of speedy trial, alleging Hoover had been arrested on December 1, 2011, for one count of raping MC1 on or about March 1 to July 21, 2011; that an order to nolle prosequi the 2011 case was entered on June 28, 2012; that the order did not state that the dismissal was for good cause; the time from June 28, 2012 (nolle prosequi order), to May 5, 2020 (date of second arrest), was not excludable for purposes of speedy trial; and the case should be dismissed for violation of speedy trial. The State argued Hoover had failed to raise the issue of lack of good cause when the nolle pros order was entered, good cause existed to nolle pros the 2011 charge, and the 2011 case was not near the speedy-trial time when the nolle pros order was entered. The circuit court denied Hoover's motion.

The case proceeded to a jury trial. Hoover's children testified regarding the sexual abuse Hoover perpetrated against them as well as the sexual acts Hoover made them perform on each other. The jury convicted Hoover of two counts of rape and sentenced him to thirty years' incarceration on each count, to be served consecutively. Hoover appealed his convictions to this court, arguing only that the circuit court erred in denying his motion to dismiss for lack of a speedy trial. This court affirmed the convictions on direct appeal in *Hoover v. State*, 2023 Ark. App. 554, 682 S.W.3d 15, holding that Hoover had failed to include the docket sheet from 2011, the motion for nolle pros, the transcript of the nolle pros motion hearing if there was one, or the order of nolle pros in the record; therefore, he

2

had failed to bring up a record sufficient to demonstrate that he either made an objection to the lack of good cause at the time the State moved to nolle pros the 2011 case or that he did not have the opportunity to do so.[1]

Hoover timely filed for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure.[2] After a hearing on April 23, 2023, the circuit court denied Hoover's Rule 37 petition in an order filed on May 17, 2023. In that order, the circuit court found that Hoover's counsel filed an appropriate motion for violation of speedy trial prior to the 2020 trial; a hearing was held on that motion; there was no hearing and no transcript regarding the 2012 nolle prosequi order so none could be provided; there was no evidence trial counsel had been given an opportunity to object to the order; there was no proof presented that the motion would not have been granted "with good cause"; and any argument to the contrary was purely speculative. Regarding Deputy Smith's statement that he arrested Hoover after Hoover refused to come in for an interview, the circuit court found that this statement did not rise to the level that would trigger a mistrial even if a motion had been made, and calling attention to that statement could have been more prejudicial than helpful. As for not calling Melissa Black as a witness, the circuit court found that trial counsel has great discretion when it comes to trial strategy and that both children had

---

[1]Hoover's petition for review on direct appeal was denied.

[2]The issues Hoover raised to the circuit court are the same four ineffective-assistance arguments presented in this appeal as well as the argument that counsel was ineffective for failing to impeach MC1 with her statement that she did not recall any rape occurring, an argument that Hoover has abandoned on appeal.

3

identified Hoover as the person who assaulted them and forced them to engage in inappropriate sexual contact with each other—mistaken identity was not a factor or a reasonable argument.

We do not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Holland v. State*, 2023 Ark. App. 594, 681 S.W.3d 526. A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been made. *Id.* In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Id.*

Our standard of review also requires that we assess the effectiveness of counsel under the two-prong standard set forth by the United Stated Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), which necessitates that a petitioner first demonstrate that counsel's performance was deficient—that counsel made such serious errors that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution— and that counsel's performance fell below an objective standard of reasonableness. *Id.* Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for finding ineffective assistance of counsel; there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the burden is on the petitioner to overcome this presumption and identify specific acts and omissions by counsel that could not have been the result of reasoned professional judgment. *Id.* Counsel is

4

allowed great leeway in making strategic and tactical decisions, particularly when deciding not to call a witness. *Id.* Conclusory statements that counsel was ineffective cannot be the basis for postconviction relief. *Id.*

Second, if the petitioner can demonstrate that counsel's representation was deficient, he must then show that the deficient performance prejudiced the defense; this requires a showing that counsel's errors were so serious that the petitioner was deprived of a fair trial and that there is a reasonable probability—a probability sufficient to undermine confidence in the outcome of the trial—that the fact-finder's decision would have been different absent counsel's errors. *Id.* Unless a petitioner makes both showings, the allegations do not meet the benchmark on review for granting relief on a claim of ineffective assistance. *Lee v. State*, 2017 Ark. 337, 532 S.W.3d 43.

Hoover's first two arguments on appeal concern the denial of his motion to dismiss based on speedy-trial violations. He contends that his counsel was ineffective for failing to include the 2012 nolle prosequi order in the direct-appeal record, asserting that had the 2012 order been included, his convictions would have been reversed and dismissed on direct appeal because the order did not state that the 2011 case was dismissed for good cause.[3] Hoover also argues that trial counsel was ineffective for failing to object to the entry of the nolle prosequi order in 2012.

---

[3]We note that the 2011 case had no allegations as to MC2; therefore, the motion to dismiss for speedy-trial violation would have no bearing on the 2020 charges against Hoover as to MC2.

Ryan Norris, the second-chair attorney at Hoover's trial in 2020, testified that Arron Edwards was the attorney assigned to Hoover's case in the public defender's office; that she filed a motion to dismiss the charges against Hoover in the 2020 case on the basis of her belief that there was a speedy-trial violation because Hoover's original case had been assigned to the public defender's office in 2011, and that case had been nolle prossed in 2012; and that Dan Stewart had represented Hoover in the 2011 case when it was nolle prossed. Norris explained that when a case is nolle prossed, the public defender's office usually receives an email from the prosecutor stating that the case has been nolle prossed; there was not a hearing on the matter; and it was "hit or miss" if the office received an order stating that the case had been nolle prossed. Norris stated that he had never objected to a nolle prosequi filed by written order; he admitted that in 2011, he was not familiar with the good-cause requirement as it related to a nolle prosequi order for speedy-trial purposes, but he was not the primary attorney on the 2011 case; and that this was the only case he could remember that had been nolle prossed and had actually been reset for trial.

Arron Edwards, the lead attorney in Hoover's rape trial, testified that she filed a motion to dismiss Hoover's case as to MC1 for speedy-trial violation, but the circuit court had denied the motion. Edwards stated that she had seen the 2012 nolle prosequi order and had access to it when she filed her motion to dismiss, but she did not recall if she presented the order to the circuit court; she admitted that this court affirmed the denial of the motion to dismiss in light of the fact that the issue was not preserved because the 2012 dismissal order was not included in the record nor was a transcript of the hearing on the

motion to dismiss. Edwards said that in her opinion, it would have been unethical for Hoover's trial attorney to have objected to a nolle prosequi of the charges against Hoover in 2012; she said that she had never objected to a nolle prosequi of charges against a client. She explained that the circuit court did not hold hearings on nolle prosequi motions; that often she did not know that a case had been dismissed until she received the docket and a case was no longer on it; and therefore, there would have been no opportunity to object to the entry of a nolle pros order.

Hoover, citing *Hicks v. State*, 340 Ark. 605, 12 S.W.3d 219 (2000), contends that case law makes it clear that a nolle prosequi order has to be in the record in order to obtain review of a speedy-trial ruling based on it, and counsel was objectively deficient for failing to include that order in the appeal record. He also cites *State v. Washington*, 273 Ark. 82, 617 S.W.2d 3 (1981), for the principle that the act of the State in filing a nolle prosequi motion does not toll the speedy-trial provisions absent a showing of good cause for the period of delay; the State is not relieved of speedy-trial limitations "merely because a defendant is permitted absolute release pending disposition of the charges." 273 Ark. at 88, 617 S.W.2d at 6. Hoover admits that the State's motion to nolle prosequi was granted without a hearing; he argues that because there was no hearing, there could be no finding of good cause for the nolle prosequi.

We disagree that counsel's performance was deficient because the nolle prosequi order was not included in the direct-appeal record. In the motion to dismiss for speedy-trial violation, counsel admitted that the 2012 order did not state that the case was nolle prossed

7

for good cause; therefore, that information was before the circuit court when it made its decision to deny the motion to dismiss. Furthermore, the circuit court noted at the hearing on the motion to dismiss that it had reviewed the older case prior to the hearing on the motion to dismiss. Hoover has failed to show that the inclusion of the order would have changed the circuit court's denial of his motion to dismiss on a speedy-trial violation.

Hoover also contends that counsel was ineffective for failing to object to the entry of the 2012 nolle prosequi order for lack of good cause. A petitioner has the burden of overcoming the presumption that counsel is effective by identifying specific acts and omissions that, when viewed from counsel's perspective at the time, could not have been the result of reasonable professional judgment. *Lee*, 2017 Ark. 337, 532 S.W.3d 43.

When a petitioner asserts that counsel was ineffective for failure to make a motion or an argument, the petitioner must show that the motion or argument would have been meritorious because the failure to make an argument that is meritless is not ineffective assistance of counsel. *Id.*

It is not necessary to determine the periods excluded from speedy-trial computation until a defendant has moved to enforce the right to a speedy trial pursuant to Rule 28 of the Arkansas Rules of Criminal Procedure unless it is specifically provided to the contrary in Rule 28. Ark. R. Crim. P. 28.3. (2022). Rule 28.3(f) provides that the period of time between a nolle prosequi on the prosecutor's motion for good cause shown and the time the charge is later filed for the same offense is excluded for purposes of speedy trial. Evidence presented at the Rule 37 hearing revealed that it was Edwards's and Norris's understanding

that the case was nolle prossed in 2012 for lack of evidence. A lack of evidence is good cause for a nolle prosequi so long as the State is not simply attempting to evade the speedy-trial requirement. *Jones v. State*, 347 Ark. 455, 65 S.W.3d 402 (2002). Hoover has failed to show that objecting to the nolle pros order in 2012 would have resulted in a different outcome.

Hoover next contends that trial counsel was ineffective for failing to move for a mistrial when Deputy Keith Smith testified that he arrested Hoover after he refused to give a statement, asserting that such a statement was an improper comment on his right to remain silent. We disagree.

At the Rule 37 hearing, Deputy Smith testified that in 2020, he received an email from the Arkansas State Police Crimes Against Children Division (CACD) providing additional evidence concerning allegations against Hoover; on the basis of this information, he began an investigation of Hoover. CACD had already interviewed MC1 and MC2, so after locating Hoover's phone number, he called Hoover and asked if he would come in for an interview; when Hoover declined, Deputy Smith took the case file to the prosecutor's office to obtain a warrant. Deputy Smith explained that his request for the warrant was based on allegations that rapes had occurred approximately ten years earlier, that Hoover was raping his six-year-old son and five-year-old daughter, and he was making his son rape his daughter. Deputy Smith explained that he would try to talk to a defendant as part of an investigation, but whether or not he was able to talk to a defendant made no difference as to whether he sought an arrest warrant from the prosecutor's office. He testified he did not seek an arrest warrant because he was unable to talk to Hoover.

9

Norris did not recall Deputy Smith making the statement at issue until Hoover's counsel showed him the transcript, but he said that technically he did not see anything wrong with the statement. On cross-examination, Norris was provided with an expanded version of Deputy Smith's testimony, which was that Deputy Smith had received some new disclosures, and on the basis of that information, he had opened the case.

Norris testified that generally, prior to obtaining an arrest warrant, evidence was gathered and there was an attempt to talk to the defendant. However, he said that sometimes there was no attempt to speak to a defendant prior to seeking a warrant; it was different every time. Norris stated that Deputy Smith had followed the steps of conducting an investigation, and he did not arrest Hoover solely because Hoover would not come to the sheriff's office and speak with him.

In *Salinas v. Texas*, 570 U.S. 178 (2013), Salinas was developed as a suspect in a double murder; he voluntarily accompanied officers to the police station for a noncustodial interview; he answered officers' questions for most of the interview, but when asked if his shotgun would match the shells recovered at the murder scene, Salinas remained silent before proceeding to answer additional questions. The Supreme Court of the United States held that Salinas's silence in response to the question of whether his shotgun would match the shells found at the scene was not a violation of his Fifth Amendment right to remain silent because Salinas never invoked the protection of that privilege during the voluntary interview; a defendant normally does not invoke his Fifth Amendment rights by remaining silent.

10

In the present case, Hoover never even participated in a voluntary interview with law enforcement. If silence at a voluntary interview is not protected without a specific invocation of a person's Fifth Amendment rights under *Salinas*, Hoover's refusal to speak to law enforcement officers at all would also not be protected without a specific invocation of the protection of the Fifth Amendment.

Furthermore, a mistrial is an extreme and drastic remedy that should be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *Castillo v. State*, 2023 Ark. App. 313, 669 S.W.3d 609. When a witness's reference to an accused's silence is not responsive to the question asked, and the State does not dwell on the reference, a mistrial is not warranted. *Sylvester v. State*, 2016 Ark. 136, 489 S.W.3d 146. Deputy Smith's comment was not responsive to the prosecutor's question regarding what led him to seek an arrest warrant, which was the evidence of new disclosures by Hoover's children, and the prosecutor did not ask questions about Hoover's refusal to be interviewed. Hoover has failed to show that a mistrial would have been granted even if requested.

Hoover's last argument is that his trial counsel was ineffective for failing to call his sister, Melissa Black, as a witness to testify that their cousin, David Pullin, was a likely suspect in the rapes of MC1 and MC2. At the Rule 37 hearing, Black testified she knew that in 2011, MC1 had said the person who abused her was wearing women's clothing; while she had never known Hoover to do that, she said that Pullin, who had lived with Hoover and his children for a brief time in 2010 and 2011, had long been a cross-dresser who wore

11

women's clothing on a daily basis. Black also testified that she had found many notebooks filled with stories written by Pullin about sodomizing or sexually assaulting children or young women, and about a month before the jury trial, she took some of those notebooks to the public defender's office and gave them to Norris and Edwards, although both attorneys testified that they did not meet with Black until the day of jury selection. Edwards testified that Black had brought in a stack of written ramblings purportedly written by Pullin; that the writing was "scrambled" and "hard to comprehend" and was of a deviant sexual nature involving sex with underage children; but Black could not authenticate the stories as being authored by Pullin because she did not see him write them. Edwards stated that she did not attempt to proffer Black's testimony because she did not find her to be a credible witness. Furthermore, Edwards testified that even though there had been some mention about women's clothing, there was no evidence to support the introduction of a possible third-party suspect because Hoover's children testified that it was their father who had sexually abused them night after night.

Hoover argues that had his attorneys called Black as a witness, she would have testified about Pullin's penchant for cross-dressing, his sexually deviate writings, and the fact that Pullin had lived with Hoover and the children during the time of the charged acts, thus giving him access to the children; he asserts that had this evidence been presented to the jury, there was a reasonable probability that he would have been acquitted of one or both of the offenses. We disagree.

Trial strategy and tactics are matters of professional judgment and are not generally grounds to find counsel ineffective. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006). An ineffective-assistance claim predicated on an alleged failure to investigate potential witnesses must demonstrate how a more in-depth pretrial investigation would have changed the outcome of the trial. *Wertz v. State*, 2014 Ark. 240, 434 S.W.3d 895. The children testified at trial that it was Hoover—their father—who raped them and forced MC2 to rape MC1. There was no case of mistaken identity.

Affirmed.

HARRISON, C.J., and VIRDEN, J., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.